KEEGAN *v.* LORANGER.

FRAUDULENT CONVEYANCES — BILL IN AID OF EXECUTION — PRIMA FACIE CASE — HUSBAND AND WIFE.

> The *prima facie* case which is established under Act No. 99, Pub. Acts 1897, on a bill in aid of execution, by introduction of the judgment, execution, and levy, and proof of the conveyance complained of, may be overcome by convincing testimony that the grant was in fulfillment of an agreement to make the deed in payment of a *bona fide* loan, although the grantee is the debtor's wife.

Appeal from Monroe; Kinne, J.  Submitted October 19, 1898.  Decided November 9, 1898.

Bill in aid of execution by Thomas Keegan against Philip B. Loranger and Minnie S. Loranger.  From a decree dismissing the bill, complainant appeals.  Affirmed.

*Charles A. Golden* and *Willis Baldwin*, for complainant.

*E. R. Gilday* (*G. M. Landon*, of counsel), for defendants.

MOORE, J.  This is an appeal from a decree dismissing a bill of complaint filed by a judgment creditor of Philip B. Loranger in aid of an execution.

In March, 1883, the complainant deposited money in the bank of Lafountain & Loranger.  The partners composing this bank were Mr. Lafountain and the defendant Philip B. Loranger.  Mr. Loranger shortly after this retired from the firm.  In July, 1883, the bank failed, and passed into the hands of an assignee.  Complainant received a portion of the amount due him from the assets of the bank.  In September, 1885, he obtained a judgment for the balance due him, which judgment was sued over and put into a new judgment in November, 1895.  The father of Philip B. Loranger died in 1872, leaving quite an estate.  His will left the property to his wife as trustee.  Upon her death, a portion of the property would, by the terms of the will, become the property of Philip B. Loranger.  In October, 1895, Philip B. Loranger deeded his interest in his father's estate to his wife, Minnie S. Loranger, the other defendant in this proceeding.  This deed was recorded July 3, 1897.  July 9, 1897, the mother of Philip B. Loranger died; and, within a few hours after her death, Philip B. Loranger made a quitclaim deed of his interest in his father's estate to his wife.  The bill in this case alleges these conveyances are fraudulent as to the complainant, and is filed to have them set

aside, and the land conveyed subjected to levy and sale to satisfy complainant's judgment.

It is claimed on the part of the defendants that the conveyances are not fraudulent, but were made for a proper purpose. The case was tried in open court, and nearly all the testimony was taken in the presence of the circuit judge. The testimony on the part of defendants shows they were married in 1870. It tended to show that one month thereafter $3,000 was paid to Mrs. Loranger by an insurance company upon a policy of insurance made for her benefit by her brother, who died shortly before her marriage. Two or three years after his marriage, Philip B. Loranger became a member of the firm of Lafountain & Loranger. This firm remained in existence until June, 1883. Mr. Loranger contributed his time. Mr. Lafountain was supposed to be the capitalist of the firm. The financial crisis of 1873 affected the business of the bank, and it suffered heavy losses. It was also the victim of a disastrous burglary. After the $3,000 was paid to Mrs. Loranger, it was put at interest, and mortgages were taken in her name. The interest on these mortgages was paid to Mr. Loranger, and used by him. He also used the principal—nearly all of it—for the use of the bank. The defendants allege the money was used upon an agreement that, if Mr. Loranger could not repay his wife sooner, he would pay her out of his interest in his father's estate, when he should receive it. It is claimed by them that the conveyances which were made were simply the carrying out of this agreement, and that no fraud whatever was perpetrated upon anybody.

After the banking firm was dissolved, Mr. Loranger became interested in some mining property in Colorado, which he subsequently conveyed to his wife. The assignee of the banking firm filed a bill to have this conveyance set aside. It is said by the complainant that Mrs. Loranger's answer in that proceeding is inconsistent with her present claim. The circuit judge found the transaction was not fraudulent; that the property conveyed did

not exceed in value the amount of the indebtedness; and that the making of the conveyances was simply carrying out a proper agreement which was made at the time the money was borrowed from the wife by the husband. We think this finding was fully justified by the testimony. We have not overlooked the familiar rule of law that transactions of this character between husband and wife should be carefully scrutinized. We have also considered the provisions of Act No. 99, Pub. Acts 1897, which provide that complainant shall make a *prima facie* case on a bill filed in aid of execution by introducing his judgment, execution, and levy, and proof of the conveyance complained of, and that thereafter the burden of proof shall be upon the judgment debtor, or persons claiming under him, to show that the transaction is in all respects *bona fide.* We do not deem it necessary to recite the testimony in detail. It will be sufficient to say it fully meets the requirements of the rule of law in relation to dealings of this character between husband and wife, and the provisions of the statute as well.

The decree is affirmed, with costs of this court.

GRANT, C. J., MONTGOMERY and HOOKER, JJ., concurred. LONG, J., did not sit.